We move to the next case, Crump v. Saul. Good morning, my name is Randall Forbes, I represent the disability claimant, I did not limit the ability to me to answer all comprehensive questions, but I'll try my best. In one sense, when we looked at this case, we thought the case law was absolutely clear and that this but there has been some action over the last three, four months, which calls that assumption somewhat into doubt. I'm prepared to distinguish what I think is the Joselit case, but before I get to that point, there's really two applicable hypotheticals here. One is the first hypothetical, which became the RFC, that does not have what we call CPP limitations, concentration persistence or pace limitations, in it. Hypothetical number two, which talks about racing thoughts and being off task 20%, that is a typical CPP hypothetical, and it was work preclusive. Mr. Forbes, what accommodations would be sufficient to accommodate Ms. Crump's view of her difficulties with PPCs, persistence, pace, and concentration? I'm asking because I frankly had some sympathy with the district court's point where he's saying, nobody's told me what would be sufficient here. Right, and I understood that the context of that is that our office in particular over the last two years has won five or six of these, and we had written a certain type of brief that seemed to be successful every time, and so we repeated the formula. This particular judge wanted more, I understand that happens sometimes. What I would say is that the ALJ, in I think post hoc fashion, and I can walk you through that in a minute, but the ALJ says racing thoughts are why he chose the routine, simple, and minimal workplace change limitations. The question is, how should that limitation have been phrased and inserted into the hypothetical, and it should have been inserted into the hypothetical one or two ways. That the rendered the claimant off task more than employer tolerances, or it should have been worded the opposite way, that the racing thoughts would not render the claimant off task, whatever the limitation. More than employer tolerances off task, the other is a limitation less than employer tolerances off task. And it was the ALJ's RFC to formulate, and the ALJ chose not to I had actually a very similar question to Judge Hamilton. So here's the way I read Judge Simon's opinion in the district court. Judge Simon, I'm looking right at the appendix, page three of the opinion or page five of the appendix. He says, one of the problems with Ms. Crump's argument, she's not specified what additional limitation should have been included in the RFC. So forget the hypothetical, the way the hypothetical is constructed. I totally understand your point there. But as a factual matter, what other limitations did, you know, something specific should have been incorporated in the RFC? The judge said he did this because of racing thoughts. Racing thoughts are something that would interrupt concentration or pace. It would be something that occur at a different duration or intensity. And it's up to the judge to put that in there based on the evidence. And the evidence... So that's what the ALJ did, right? At page nine of 11 of the decision, it said the claimant's limited to simple tasks because of issues concentrating due to racing thoughts from bipolar disorder. So that's what the ALJ did. And Judge Simon was the RFC, Your Honor. The RFC is on AR 42. And he doesn't mention that at all, unless I'm looking at the wrong RFC. But I don't see racing thoughts anywhere in the RFC. I see it in the discussion of the RFC. But it's not in the hypothetical that the RFC is based on. And I put myself in the position of the counsel at the administrative hearing. He hears this first hypothetical, which on its face does not have CPP limitations. And that counsel has no idea how the judge is going to justify the decision. So he sees that hypothetical. And then he sees the next one. The next one is racing thoughts that would take the claimant off task 20% as work preclusive. And in a sense, the claimant's counsel at the administrative hearing is kind of like in a trap because he can't hypothesize all of these other limitations at that point in time. Right now, the hypotheticals have lined up so that the racing thought hypothetical is work preclusive. Why would he do anything else given this record? Because the symptoms that the traders keep emphasizing. So I'd like to reserve the rest of my time. I just have a couple of quick questions. Am I reading this correct? The plaintiff, claimant here was a grandmother at age 30 or so? I think so. And is there any, there's some background discussion here. But does the role of the history of substance abuse and noncompliance with medications play any role for us in this appeal? I don't think so because it wasn't analyzed on a drug alcohol addiction format. Plus those issues would have already been in the mind of the ALJ when he formulated the hypothetical and the RFC. And did you want to try to address Josephic specifically? Sure. Before the government needs to talk. Yes, they will. I'm sure they'll bring it up. Okay, so Josephic basically says that the CPP limitations occur within a zone of proximity in relation to other people. So the distinction is that the ALJ and Josephic has captured the CPP limitations by creating that zone within the RFC. Whereas here, there's no indication that the CPP limitations are completely related to proximity to other workers of the general public. And the broader question about this is, if it's not in the RFC, it's got to fall within one of the stated exceptions, at least based on current case law. And none of those exceptions apply. And I'll reserve the rest of my time for rebuttal. Thank you. Thank you, Your Honor. May it please the Court, I'm Jay Hinesley and I represent the Commissioner in this case. Your Honor's racing thoughts, I would like to just address this very quickly. The concept of racing thoughts is not a limitation. It doesn't belong in an RFC assessment. The ALJ used that as a way of explaining his RFC. That's why you mentioned racing thoughts. Racing thoughts itself is not an RFC limitation. Your Honor, the ALJ's decision in this case is supported by substantial evidence that should be upheld. The following evidence supports the RFC determination. First, the state agency psychologists. They explained Ms. Crump's concentration and persistence limitations by saying that she was capable of performing unskilled work on a sustained basis without special considerations. Nothing more. We also have the consultative examination with Dr. Scully, in which Dr. Scully observed that Ms. Crump appeared attentive, persistent, and focused, and Ms. Crump successfully recalled all three objects after 25 minutes. The ALJ cited to treatment records, treatment records that consistently demonstrate Ms. Crump's ability to pay attention and concentrate. The ALJ also appropriately observed that Ms. Crump's treatment providers refused to prescribe attention deficit disorder medications that she requested. Finally, as the ALJ noted, although Ms. Crump disputed it during her hearing, there was evidence that she was, at least at times, the primary caregiver for her three-month-old grandson. Undoubtedly a task that does require some amount of concentration and persistence. I will talk about Joseph Fick. There actually have been three very recent cases from this court that we contend support our argument today. Joseph Fick, Saunders, and Dudley. Now, in Joseph Fick, I would submit to you that the RFC in that case is strikingly similar to the RFC in this case. In Joseph Fick, the RFC was for simple, routine, repetitive tasks requiring no more than occasional contact with supervisors and co-workers, no contact with the public, and an assigned work area at least 10 to 15 feet away from co-workers. The latter limitation having really nothing to do with CPT. And this is in conjunction with, as in this case, moderate limitations of concentration, persistence, or pace. This court saw no error in the ALJ's RFC assessment. Why? Because she considered all limitations supported by the record evidence. In Saunders, this court told us that an ALJ appropriately relied on and incorporated a medical expert's findings regarding the claimant's mental limitations, and this was sufficient to accommodate moderate CPP limitations. And finally, like in the Dudley case, the ALJ here imposed an even more restrictive RFC and corresponding hypothetical than the state agency psychologist by limiting this crumb to few workplace changes, only occasional interaction with co-workers and supervisors, no interaction with the public, and jobs requiring no more than a fourth grade reading level. And again, just to remind the court, the state agency here said only unskilled work on a sustained basis without special considerations. Mr. Hanson, let me get you to react to one of the concerns I've had here with this, and that is it's a combination of two things. So in response to hypothetical two, the VE said an individual with those conditions would be off task 20% of the workday and would be outside of employer tolerances, which I take as meaning what Dr., I don't know, how do you say it, Babu? Babu concluded when he was asked specifically to fill out that mental assessment work activities form, you know what I'm talking about? Yes. There. And there, you know, you're absolutely right that the treatment notes, in the treatment notes throughout the treatment, Dr. Babu said the concentration seemed fine, okay? But when this particular work assessment is put to him, he pretty clearly you know, in that question eight said poor or no ability to maintain attention or concentration. There's some other narrative I think that supports that. So it's the combination of those two things that have concerned me here and whether they're accounted for in the RFC, not one in isolation, but the two together. Well, first, your honor, the hearing, of course, is an opportunity for the judge to flesh out the evidence and an ALJ at times will submit various hypotheticals just to see how they play out, see what's tied to the evidence. But ultimately, the RFC has to be supported by the evidence. The ALJ is going to adopt whatever, hopefully, and in this case did, adopt what's supported by the evidence. Now, Dr. Babu's assessment was fully addressed by the ALJ on page 9 of his decision, page 9 of 11, and he indicated that he gave Dr. Babu's opinion, little weight. He acknowledged what Dr. Babu had said, but not only did he say that it was inconsistent with the record, the ALJ here explained how. I'll read from the decision, if I may. Specifically, Dr. Babu has been treating the claimant since basically her alleged onset date. However, Dr. Babu consistently found that the claimant had no mood swings and could pay attention. Dr. Babu also indicated that the claimant functioned fair on medication with no major issues. The record shows that Dr. Babu just refilled the claimant's medications with no major changes. And then the ALJ also points to Dr. Scully's finding that I mentioned earlier that the claimant was attentive, persistent. What I don't know about that is, are those observations meaning when the individual is here in the examination room or the consultation room that they appear attentive and able to follow the discussion going on? In other words, is it more general, whereas the work-related form is more specific? In other words, you're going, you know what I mean by that, you're going to the treating physician and saying, look, focus here on whether this individual can work. And in that context, Babu finds poor to concentration. And that's a good point. But again, the ALJ looked specifically at Dr. Babu's own records, which are numerous and repeatedly, and I believe in my brief, there are many references to her concentration, her attention being fine, being normal. And so it's just his opinion was not inappropriately explained why he was giving less weight to that opinion. Ms. Crump's biggest hurdle in this case involves her inability to answer a basic question, one that was posed in this court. What evidence supports greater limitations than those adopted by the ALJ? Ms. Crump has no appropriate response to this question because there was none. This court in Josephic said, quote, it is unclear what kinds of work restrictions might address the claimant's limitations in concentration, persistence, or pace because he hypothesizes none. Josephic cites no evidence that those deficits keep him from performing simple, routine, and repetitive tasks. And in Saunders, this court stated that the claimant never once has told this court what other restrictions the ALJ should have included in the hypothetical. Josephic, Dudley, and Saunders, we submit are all examples of this court's refusal to apply a categorical rule in every CPP case. Because this case is distinct with an evidentiary record that diverges from the so-called typical CPP case, it should be viewed differently. Ms. Crump argues that the claimant should not be required to fill in evidentiary gaps to save a defective decision. There were no evidentiary gaps and the ALJ's decision was not effective. This court has consistently held that an ALJ must include documented limitations in concentration, persistence, or pace. But as the district court observed, Ms. Crump failed to specify what additional limitations should have been included in the RFC. And more importantly, she fails to identify any evidence relating to her ability to concentrate, persist, or maintain pace that the ALJ failed to consider. The ALJ did consider Dr. Bagoo's observations. And the ALJ was explicit in his rationale. At step three, he noted that Ms. Crump had some difficulty concentrating and following instructions. And specifically in the decision, in the body of the issues concentrating, due to racing thoughts from bipolar disorder, he was limiting her to simple tasks. So consistently with the facts in Josephick and Saunders and Dudley, we would ask that this court uphold the ALJ's decision. And I thank you for your time today. Thank you, counsel. Can I have a minute, Your Honor? Yes. One minute. Dudley and Saunders are non-precedential decisions, so I don't know why they're being cited. I could have grabbed all of the non-precedential decisions of cases we've won from the district court and cited them too, but I didn't. This case was tried under a certain status of the case law. That case law was a line of cases that included Varga and Yurt. Recently, Josephick has come along and created a new exception, in a sense, to the three exceptions that that case law did. And that case law was a line of the parent new exception is that the claimant has to hypothesize or guess where the ALJ should go. I didn't even file my appellant's brief with that in mind because it wasn't part of the case law. And to say that there is nothing in this record that won't support concentration or pace limitations, I mean, there's years of mental health treatment here. There is a treating physician opinion here, which although was not given the way it probably should have been, in the reply brief of appellant, it is explained why that decision is different than all of those office appointments. Thank you, counsel. Thank you, your honor. Thanks to both counsel. The case is taken under advisement.